UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 50046-1 |
| v. | ) | |
| | ) | Judge Frederick J. Kapala |
| JASON NICOSON | ) | |

UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by its attorney, ZACHERY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits this Sentencing Memorandum.

I.  Introduction

As agreed in paragraph ten of the Plea Agreement, the government recommends that the Court impose a sentence of imprisonment within the applicable guidelines range as to Count One, plus a mandatory consecutive sentence of two years' imprisonment on Count Two, and makes no further recommendation concerning what sentence of imprisonment should be imposed.

II. Sentencing Analysis

    A.  USSG § 2G2.2(b)(5) enhancement

Section 2G2.2(b)(5) of the United States Sentencing Guidelines ("Guidelines"), provides that the offense level of a defendant is raised five levels "[i]f the defendant engaged in a pattern of activity involving the sexual

abuse or exploitation of a minor . . . ." In the Plea Agreement and its letter to the Probation Officer that described the offense conduct, the government contended that the § 2G2.2(b)(5) enhancement should be included in the calculation of the defendant's offense level. The Presentence Investigation Report ("PSR"), did not include the enhancement in the calculation of the defendant's offense level. The government objects to the omission of the enhancement from the offense level calculation.

    1.    Factual Background

Two computers were seized during a search of the defendant's home. Tr. 11.[1] They both contained child pornography images and the defendant had used them to trade child pornography images. Dkt. 5, ¶ 6(d).[2] Government Exhibits 1 ("GX1") and 2 ("GX2") contain information extracted from the two computers. Tr. 19, 23. Government Exhibit 1 is a CD that contains two types of image files–.jpeg and .wmv.[3] Each .jpeg file contains a single image whereas each .wmv file contains a single video. Government Exhibit 2 consists of partial chat conversations by the defendant when he was using the file sharing program Gigatribe. Government Exhibit 3 ("GX3") consists of partial chat conversations printed from the defendant's Yahoo account. Tr. 31-32.

---

[1] Citations to the December 20, 2013 hearing transcript are "Tr." followed by the page cited.
[2] The document filed as Docket No. 5 in this case is the Plea Agreement.
[3] The only other files on GX1 contain Gigatribe chat conversations that are identical to GX2.

The partial chats contained in GX2 and GX3 evidence the defendant's efforts to purchase and view live webcam broadcasts of young girls over the Internet. In these partial chats, the defendant is identified by his usernames–Grant Turnmire and pedomom. Tr. 26, 34, The defendant and the people from whom he solicited the broadcasts referred to the broadcasts as "shows." GX3, pp. 1, 3. The defendant was not specific about what he wanted to see in shows. He expected to and did pay for shows. GX3, pp. 1, 8. He preferred that the people shown in the broadcast were young girls. GX3, pp. 4, 7.

The image and video files on GX1 were created through the use of a Logitech webcam. Tr. 29-31. The webcam was capable of recording still images and video. Tr. 28. The webcam was pointed at the defendant's computer screen and was used to take still images and videos of what was displayed on the screen. The reflection of the defendant can be seen on the computer screen as he recorded some of the images with the webcam. Tr. 29-30. The still images included close-ups of the vagina of a prepubescent female. Tr. 35. The other images and videos mostly depict clothed and nude clothed children.

    2.    Legal analysis

Application of the § 2G2.2(b)(5) enhancement to the defendant requires proof by a preponderance of the evidence that:

1)     the defendant engaged in activities;

2)     the defendant's activities constituted a pattern of activity; and

3)     the pattern of activity involved the sexual abuse or exploitation of a minor.

This enhancement "singles out for more severe punishment those defendants who are more dangerous because they have been involved first hand in the exploitation of children." *United States v. Strieper*, 666 F.3d 288, 294 (4th Cir. 2012) citing *United States v. Ketchum*, 80 F.3d 789, 795 (3d Cir. 1996)). "Moreover, the application of the § 2G2.2(b)(5) enhancement to fictitious children indicates a focus on the danger a defendant would pose if given the opportunity to carry out his plans, rather than on whether a defendant actually has exposed a child to direct harm." *Id.*

      a.     Defendant's Personal Participation

It is not expected that the defendant will dispute that the activities evidenced by the three Government Exhibits were activities in which he personally engaged. The defendant possessed the computers described in Paragraph 6(d) of the Plea Agreement. Tr. 11. Government Exhibits 1 and 2 contain information obtained from those computers (Tr. 19) and is evidence of the activities engaged in by the user of the computers. The computers contained no evidence of their use by anybody but the defendant. Tr. 27. Government Exhibit 3 contains information obtained from the defendant's

4

Yahoo account. The account was password protected prior to Special Agent McDaniel's receipt of the password from the defendant. Tr. 32. The information is evidence of the defendant's activities when he used the Yahoo account. Thus, the activities evidenced by Government Exhibits 1, 2, and 3 were the defendant's personal activities.

      b.      Pattern of Activity

A pattern of activity includes "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct. U.S. SENTENCING GUIDELINES MANUAL § 2G2.2(b)(5) cmt. n.1 (2012). The images and videos on GX1 prove that the defendant successfully obtained shows several times. Government Exhibits 2 and 3 demonstrate that the defendant solicited the shows more than a dozen times. This evidence establishes that the defendant's activities constituted a pattern.

      c.      Sexual Abuse or Exploitation

"Sexual abuse or exploitation" is defined as "any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if

5

the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). 'Sexual abuse or exploitation' does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.*

The evidence in this case shows that when the defendant viewed and attempted to view live broadcasts of young girls, he violated 18 U.S.C. § 2251(a). In pertinent part, § 2251(a) is violated if a person:

> employs, uses, persuades, induces, entices, or coerces any minor to engage in, ... with the intent that such minor engage in, any sexually explicit conduct ... for the purpose of transmitting a live visual depiction of such conduct..., if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce.

In this case, the defendant employed, persuaded, induced, and enticed, and attempted to employ, persuade, induced, and entice minors to engage in sexually explicit conduct for the purpose of transmitting live visual depictions to the defendant through the Internet. [4]

Employment, persuasion, inducement, and enticement through an intermediary may be sufficient to prove a violation of § 2251(a). *United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010). Likewise, the § 2G2.2(b)(5)

---

[4] The Internet is an interstate commerce facility. *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009).

6

enhancement may be applied even if the defendant had no personal contact with the victim. *United States v. Williams*, 183 Fed.Appx.246, 247 (3d Cir. 2006) (not selected for publication). In this case, through the intermediaries that he chatted with, the defendant sought to employ, persuade, induce, and entice minors to participate in the live broadcasts. The fact that the defendant may not have personally spoken with or personally abused the minors does not impede the application of the § 2G2.2(b)(5) enhancement.

The images and videos on GX1 prove that the defendant successfully purchased and viewed live broadcasts of young children over the Internet. Even if the defendant had not succeeded in his efforts, there is ample additional evidence of attempts throughout GX 2 and GX3. Proof of an attempt requires proof that the defendant took a substantial step toward completion of the offense. *United States v. Berg*, 640 F.3d 239, 246 (7th Cir. 2011). Chats between a defendant and a minor on the Internet may constitute substantial steps toward completion of inducing or enticing a minor. *United States v. Rothenberg*, 610 F.3d 621, 627 (11th Cir. 2010). In this case, the defendant not only engaged in chats, he made payments for live broadcasts. GX3, pp. 1, 8. Evidence of the payments is certainly evidence of substantial steps toward the completion of the offense.

The defendant's intent that the minors in the broadcasts engage in sexually explicit conduct has been established by circumstantial evidence.

7

Sexually explicit conduct includes the "graphic or simulated lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(B)(iii). "A lascivious display is one that draws attention to the genitals or pubic area of the subject 'in order to excite lustfulness or sexual stimulation in the viewer.'" *United States v. Russell*, 662 F.3d 831, 834 (7th Cir. 2011). There is little, if any, room for argument that the images numbered 247059, 247061, and 247062 constitute the graphic lascivious exhibition of the genitals of a prepubescent female child. As circumstantial evidence these images provide substantial support for the conclusion that the defendant sought broadcasts of sexually explicit conduct by young females. The defendant personally used his webcam to record these images. He chose these specific images. His choice and actions accurately evidence his intent.

While the three images are the only lascivious displays recovered from the live performances that the defendant recorded either by still image or video, they are not the only circumstantial evidence of his intent. Additional circumstantial evidence includes the defendant's sexual interest in children, as evidenced by his guilty plea to the charges in this case. Further, there is an almost complete absence of discussions between the defendant and the potential providers of the live broadcasts concerning the content of the broadcasts. This strongly supports an inference that such discussions were avoided in an effort to hide the true nature of the broadcasts.

8

The answers given to the defendant when he asked a couple of questions about the shows are also consistent with the conclusion that the defendant was seeking live broadcasts of sexually explicit conduct. In response to his question of what a child will do on cam, the defendant was told that she would do whatever he wanted. GX3, p. 4. Another person represented that it would be "50$ for a very good and hot show." GX3, p. 6. The defendant was satisfied with the description and agreed to pay the money. *Id.* In another chat, the defendant asked about the length of the show. He was told "ass long as u cum." GX3, p. 9. This answer indicates that the seller believed the defendant would masturbate while he watched the broadcast and that the broadcast would end when he had ejaculated.

There is additional evidence that the defendant's interest in young girls was sexual. During the chat contained in GX2, pp. 1-6, the defendant stated that he was the mother of two young girls, ages 5 and 7. *Id.* at 2. Further, he strongly intimated that he, as the girls' mother, had sexual encounters with them. *Id.* at 5-6.

The evidence discussed above proves by a preponderance that the defendant employed, used, persuaded, induced, and enticed, and attempted to employ, use, persuade, induce, and entice, intermediaries for minors to transmit live visual depictions over the Internet with the intent that the minors depicted in the transmission engage in sexually explicit conduct. This

9

conduct violated 18 U.S.C. 2251(a) and requires the inclusion the § 2G2.2(b)(5) enhancement in the defendant's offense level calculations.

    B.    Section 3553(a) Factors

After calculating and considering the correct Guidelines range, a district court then must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) in fashioning a defendant's sentence. *See, e.g., United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008). There is no limitation "on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Here, the § 3553(a) factors favor a within-guideline sentence.

    1.    Nature, Circumstances, and Seriousness of the Offense, As Well As the Need to Provide Just Punishment

The nature, circumstances, and seriousness of defendant's offense, as well as the need for just punishment for that offense, counsel in favor of a Guidelines sentence. In this case, the defendant's exploitation of hundreds of children by possessing and viewing images of child pornography constitutes a serious offense against children, which Congress concludes is deserving of the stiff sentences attached to these types of criminal offenses.

Additionally, the fact that defendant's crime involves victims further demonstrates the seriousness of the offense. The victims of

defendant's distribution and possession of child pornography are the children who were raped and exploited to create images that defendant possessed. *See United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their interests in avoiding the disclosure of personal matters."). Among the files recovered from defendant's hard drives and submitted to the Child Victim Identification Program (CVIP) of the National Center of Missing & Exploited Children, the CVIP identified approximately 113 known underage, minor victims. Unfortunately, not every victim's identity is known to law enforcement. Nevertheless, whether or not we know the victimized child's identity does not make the child any less real or any less a victim of sexual exploitation by the defendant. As these innocent people go about living their lives, without even knowing it, people like the defendant are continuing to exploit them.

The defendant's conduct in this case has contributed to the continued sexual abuse, exploitation and victimization of a countless number of children, to the ever-growing market for creation and distribution of materials that exploit children, and broadens the base of material that child molesters use in grooming victims. Thus, the nature and circumstances of

defendant's offense, as well as the need to punish him for those offenses, support a within-guideline sentence.

        2.     Nicoson's History and Characteristics

Defendant's history and characteristics also favor a Guideline sentence. The defendant has not demonstrated that he has any mitigating trait or characteristic to an extraordinary degree. There is little, if anything, positive about the defendant's history and characteristics.

        3.     Need for General Deterrence

The Seventh Circuit has commented on why significant sentences are reasonable for child pornography offenses:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded- both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. (Citations omitted). Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). The need for general deterrence of others from committing the same crimes committed by Nicoson is obvious and compelling.

A Guideline sentence in this case would also serve the purpose of specifically deterring defendant from committing additional offenses in the future through incarceration.

4. Need to Protect the Public (Specific Deterrence)

A within guideline sentence also would serve to protect the public specifically from further crimes of the defendant. The Seventh Circuit has stated that, "[s]tatistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children." *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011). The defendant's interest in the child pornography that he possessed and the ages of the children he wanted to view demonstrate his sexual interest in children.

5. The Need to Avoid Unwarranted Sentencing Disparities

Finally, as with any Guidelines sentence, sentencing the defendant to a within guideline sentence in this case would serve the objective of reducing sentencing disparities among defendants who commit similar crimes with similar records. *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose after *Booker*, the more disparity there will be.").

13

III.   Recommendation

Based on the foregoing, the government recommends that the Court impose a sentence of imprisonment within the applicable guidelines range, plus a mandatory consecutive sentence of two years' imprisonment on Count Two.

                        Respectfully submitted,

                        ZACHERY T. FARDON
                        United States Attorney

By:/s Michael D. Love
    MICHAEL D. LOVE
    Assistant United States Attorney
    Suite 3300
    327 South Church Street
    Rockford, Illinois   61101
    (815) 987-4444

CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following documents:

UNITED STATES' SENTENCING MEMORANDUM

were served on January 14, 2014, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s Michael D. Love
MICHAEL D. LOVE
Assistant United States Attorney
Suite 3300
327 South Church Street
Rockford, Illinois 61101
815-987-4444