IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Judge Frederick J. Kapala |
| | ) | |
| JASON NICOSON | ) | Case No. 12CR50046 |

**Response to Government's Objection to Presentence Investigation**

Jason Nicoson by the Federal Defender Program, Carol A. Brook Executive Director and Paul E.Gaziano one of her assistants submits to this Honorable Court a Response to the Government's Objection to Presentence Investigation

**The Plea ; The Plea Agreement; and The Presentence Report**

Mr. Jason Nicoson pleaded guilty to counts one and two of the indictment, both counts charged a violation of 18 U.S.C. §2252A (a)(1).[1] The government has agreed to dismiss count three of the indictment at the time of sentencing.

In the plea agreement, the parties reserved several issues. After the presentation of the plea agreement, Mr. Nicoson was referred to the Probation Office for the purpose of a presentence investigation report (PSI). That report has been completed and Mr. Nicoson has reviewed it with his attorney. Mr. Nicoson

---

[1] Contrary to the government's introduction and conclusion, the crimes of conviction entail a five-year mandatory minimum. There is no mandatory consecutive sentence of two years relating to count two. (Govt Memo p 1 and p.14)

offers no objection to the sentencing guideline calculation as offered in the PSI.

The PSI concludes that Mr. Nicoson's adjusted offense level is 34 and that his criminal history category is I, which places him at an advisory sentencing range of 151 months to 188 months. The government disputes that calculation and asks that the court find that Mr. Nicoson engaged in a pattern of activity involving the sexual abuse or sexual exploitation of a minor. Mr. Nicoson disagrees with the government and asks this court to accept the calculations in the PSI.

**The Sought for Enhancement**

The government asks this court to elevate Mr. Nicoson's adjusted offense level by five levels. The government's request is based upon U.S.S.G.§2G2.2 (b)(5) which provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels."

Application Note 1 of §2G2.2 provides definitions which are necessary to the resolution of the issue. These definitions are:

1. *"Pattern of activity involving the sexual abuse or exploitation of a minor"* means any combination of two or more separate instances of of the sexual abuse or sexual exploitation of a minor by the defendant ,whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.
2. *"Sexual abuse or exploitation"* means any of the following: (A) conduct described in 18 U.S.C.§2241,§2242,§2243,§2251(a)-

(c),§2251(d)(1)(B),§2251A,§2260(b),§2421,§2422 or§2423... "*Sexual abuse or exploitation*" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

**The Evidentiary Hearing**

Due to the government's objection to the PSI, the court conducted an evidentiary hearing on December 20, 2013. Special Agent Shannon McDaniel was the only witness to testify at that hearing . Agent McDaniel is assigned to the FBI unit which investigates child pornography and child exploitation cases.(T.9)[2] She is the agent with primary responsibility for the Nicoson investigation. (T.11)

Agent McDaniel was present when the search warrant for Mr. Nicoson's home was executed. Two laptop computers were seized in that search. Those computers were subjected to a forensic analysis which included the removal of the hard drives from the computer and the creation of a forensic copy for analysis. This two-step procedure is to insure that the original hard drive is not modified and allows for a forensic examination of the contents. (T.13)

Agent McDaniel created Govt. Ex 1 which is a CD containing some of the information which was stored on Mr. Nicoson's computers. (T. 19) Exhibit 1 contains three parts: "some chats recovered from the computer...JPEG images

---

[2]References to the transcript of the 20 December 2014 hearing are T. followed by the page number.

and some media files [video clips]." (T.20) The chats contained in Ex. 1 are also contained in Ex.2 which is a print out of the chats. Those chats were removed or copied from Mr. Nicoson's Gigatribe Account. (T. 21) Exhibit 3 is a print out of some e-mail communications of Mr. Nicoson's Yahoo account. The content of Ex. 3 is not contained in Ex.1. (T.39-40). [3]

GigaTribe is a peer to peer file-sharing network. (T21) . Users of computers are allowed to interact with each other on this type of network and allow the sharing of images or files. (T.21). Exhibit 1 contains what Agent McDaniel described as child pornography in JPEG form or video form. (T.36)

The government advised the court that it was relying on conduct described in 18U.S.C.§2251(a) to support its argument for the enhancement. (T.18). Agent McDaniel admitted that the contents of Ex. 2., the chats occurring on the GigaTribe Network do not establish the transmissions of any images. (T.41)

The government did not produce evidence from any Pay Pal account that Mr. Nicoson purchased any live video webs. The evidence produced by the government is at best that Mr. Nicoson viewed and copied by webcam that which is deemed child pornography. The showing by the government's evidence does not support the sought for enhancement.

---

[3] Access to the GigaTribe and Yahoo accounts was facilitated by Mr. Nicoson's providing written consent to assume his online identities. (T.32)

**The Government's Evidence Falls Short**

The government asserts that online chats or emails with another person which do not result in a transmission of pornography constitute sexual exploitation of a child. The government neither in Ex2 nor Ex.3 is able to establish that any live video performance occurred. Most noteworthy, the reproduced chats and emails in those exhibits are the best evidence which the government can garner[4].

None of those e-mails or chats establishes that a live web performance was broadcast to Mr. Nicoson. As Agent McDaniel testified with respect to Ex. 2 the conclusion is "that images weren't sent with those chats." (T.41) The government does not support its argument by presenting evidence from PayPal that Mr. Nicoson purchased or paid for any item. The government 's evidence fails to establish the dates or times that the images which form a part of Ex.1 where received or sent. (T.41) Therefore, the government's proof fails to tie any images in Ex. 1 with any communications in Ex. 2 and Ex. 3.

**Mr. Nicoson's Conduct Is Not Within §2G2.2(b)(5)**

The commentary to U.S.S.G.§2G2.2(b)(5) states that *sexual exploitation* does not include possession, accessing with intent to view, receipt, or trafficking in

---

[4]As Agent McDaniel testified these were the items which she "selected to indicate or support the enhancement that's the subject of this hearing." (T.32)

material relating to the sexual abuse or exploitation of a minor. Commentary accompanying a sentencing guideline is authoritative unless it is plainly erroneous or inconsistent with the guideline. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

The government's evidence on this issue establishes only that Mr. Nicoson possessed, received and accessed with the intent to view child pornography. An argument can be made that the evidence on this issue establishes an intent to traffic in materials relating to the sexual abuse or exploitation of a minor. *Black's Law Dictionary* (9th Deluxe ed.) at 1634 defines "trafficking" as "the act of transporting, trading or dealing esp. in people or illegal goods" ( such as child pornography). *Black's Law Dictionary* defines "deal" as 1. To distribute or 2. To transact business with ( a person or entity)". Id at 457. The commentary to the guideline explicitly precludes the inclusion of trafficking from within the ambit of the enhancement. The acts of Mr. Nicoson in possessing, accessing, receiving, and even trafficking in child pornography do not merit the sought for enhancement. The application note specifically precludes trafficking in materials relating to the exploitation of children from the enhancement.
Even the use of a webcam to reproduce that which has been transmitted to him does not support the enhancement. (See the discussion of United States v. Kemmish, 120 F3d 937(9th Cir. 1997) and the Seventh Circuit Pattern Jury

Instructions relating to the crime of exploitation in the following paragraphs).

The government failed to prove that Mr. Nicoson has engaged in sexual conduct with a child and that he personally exploited any child, actions which warrant the five-level enhancement under §2G2.2(b)(5).

In *United States v. Kemmish*, 120 F3d 937, 941 (9th Cir. 1997), the court entertained the government's appeal from the district court's denial to apply the pattern of sexual exploitation of a minor enhancement.[5] The court held in part that the enhancement has been "unanimously interpreted as being inapplicable to traffickers in child pornography who are not directly involved in the actual sexual abuse or exploitation of minors." The Seventh Circuit has adopted that rationale in defining the crime of exploitation of a minor and has stated:

> A defendant who simply possesses, transports, reproduces, or distributes child pornography does not sexually exploit a minor in violation of 18 U.S.C. 2251, even though the materials possessed, transported, reproduced, or distributed "involve" such sexual exploitation by the producer. See *United States v. Kemmish*, 120 F.3d 937, 942 (9th Cir. 1997). *Seventh Circuit, Pattern Criminal Jury Instructions*, 18USC§2251(a) at 580.

The government concedes that its arguments are based upon inferences and not direct proof. (T. 37) The direct proof fails to establish that Mr. Nicoson engaged in any physical abuse or exploitation as contemplated by the enhancement I §2G2.2 (b)(5). The direct evidence is that he possessed, viewed, and copied child

---

[5] At the time, the enhancement was cited as 2G2.2(b)(4).

pornography, none of those acts constitutes the activities which bring into play the sought for enhancement.

The type of conduct which the government's evidence shows is not the conduct which falls into the reach of the five-level enhancement of § 2G2.2(b)(5). The courts have applied that enhancement to offenders who have repeatedly sexually abused or exploited children. *United States v. Angle*, 598 F.3d 352,357 (7th Cir. 2010) held that the enhancement applied to a person who "had an unbroken, 20-year pattern of abusive conduct" which included accusations that he had personally sexually abused his niece, nephew, and girlfriend's daughter ;traveled to Mexico to have sex with children and *created* as well as consumed child pornography (emphasis in original). See also, *United States v. Burgess* 684 F3d 445, 455 (4th Cir. 2012) *cert. denied* 133S.Ct. 490(2012) which held that the enhancement applied to a person who had admitted to personally molesting 40 to 50 minor boys. In *United States v. Clark*, 685 F3d 72,79 (1st Cir. 2012) the court applied the enhancement because the defendant had two predicate convictions for indecent acts with minors. The enhancement was held applicable when the defendant was found to have sexually abused his five-year old daughter. *United States v. Anderton*, 136 F.3d 747,750 (11th Cir. 1998) .

The government's evidence does not establish any prior convictions for indecent acts with children; does not establish any prior sexual abuse; and does not

establish any exploitation which supports a finding that 2G2.2 (b) (5) should apply to Mr. Nicoson.

The enhancement does not apply to the reproduction of child pornography or to the solicitation of receipt of child pornography. *United States v. Kemmish, supra.*, and *United States v. Horn*, 187 F3d 781, 792 (8th Cir. 1999). In *Horn*, the court interpreted 2G2.2(b)(4).[6] The court in holding that the district court had erred in granting a five-level enhancement stated: the government's argument ignores "the clear statement in the application note that trafficking does not constitute sexual abuse or exploitation for the purposes of §2G2.2".

**Mr. Nicoson's Sentencing Recommendation**

Mr. Nicoson asks this Court to adopt the findings of the PSI. That places Mr. Nicoson in a guideline sentencing range of 151 to 188 months. He asks the Court to impose a sentence at the low end of that range. Mr. Nicoson does not intend to seek a variance from the range suggested by the PSI. If the Court does decides to enhance Mr. Nicoson's total offense level by 5 levels and place him in a sentencing range of 262-327 months' imprisonment, Mr. Nicoson plans on seeking a variance from that range.

---

[6]This is the same guideline provision in issue. The guideline was renumbered 2G2.2(b)(5) in 2004.

Accordingly, Mr. Nicoson requests that he be given the opportunity to submit a supplemental filing addressing the issue of a variance if this Court makes a determination that the five-level enhancement should be imposed.

Dated this 28thday of January 2014 in Rockford, Illinois.

Respectfully submitted:

FEDERAL DEFENDER PROGRAM

Carol A. Brook

Executive Director


By: ____/s/_____

Paul E. Gaziano

Attorneys for Defendant


PAUL E. GAZIANO
FEDERAL DEFENDER PROGRAM
202 W. State Street - Suite 600
Rockford, IL 61101
(815) 961-0800