# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| United States, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| v. | ) | Case No: 12 CR 50046 |
| Jason Nicoson, | ) | |
| *Defendant.* | ) | Judge Frederick J. Kapala |

## ORDER

Government's objection to the presentence investigation report [40] is sustained. Pursuant to Fed. R. Crim. P. 32(h), the court hereby gives notice of a possible departure from the sentencing guidelines calculated in the presentence investigation report as set forth below. Case set for status hearing on 4/11/2014 at 9:00 a.m.

## STATEMENT

Currently before the court is the government's objection to the failure to include in the presentence investigation report ("PSR") a 5-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(5), which applies "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The court held an evidentiary hearing during the first part of a bifurcated sentencing hearing and has considered the parties' post-hearing briefs on this issue. After careful consideration, the court sustains the government's objection and finds that the enhancement is applicable.

The application notes to § 2G2.2 define the term "pattern of activity involving the sexual abuse or exploitation of a minor" as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2B2.2 cmt. n.1. The term "sexual abuse or exploitation" is further defined as:

> any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession,

accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

Id.

According to the government, the defendant engaged in a pattern of soliciting, purchasing, and viewing over the internet live broadcasts of young girls engaging in sexually explicit conduct, or attempting to do the same. The government further argues that the defendant's conduct is the type of conduct that is prohibited by, and described in, 18 U.S.C. § 2251(a), and thus falls within the definition of "sexual abuse or exploitation" for purposes of § 2G2.2(b)(5). In support of this contention, the government introduced into evidence (1) a CD containing chat logs, image files, and video files obtained from the defendant's computer; (2) a copy of certain relevant portions of the defendant's chat history from a peer-to-peer file-sharing program called GigaTribe that he had installed on his computer; and (3) a printout of a portion of the defendant's stored chats from his Yahoo! account. The government also presented the testimony of FBI Special Agent Shannon McDaniel, who was primarily responsible for the investigation of the defendant.

Section 2251(a) prohibits the sexual exploitation of children and provides, in relevant part, that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce . . . .

18 U.S.C. § 2251(a). The term "sexually explicit conduct" includes, among other things, "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). Although it does not appear that the Seventh Circuit has spoken on the issue, other circuits have held that a defendant does not need to have communicated directly with the minor in order for there to be a violation of § 2251(a). See United States v. Lee, 603 F.3d 904, 913 (11th Cir. 2010) (holding that § 2251(a) applied to "an individual who . . . attempted to produce child pornography by communicating with only an adult intermediary"); see also United States v. Pavulak, 700 F.3d 651, 670 (3d Cir. 2012) (concluding that there was sufficient evidence to support the defendant's § 2251(a) conviction where the defendant "repeatedly insisted that [an adult female] display [her two-year-old daughter's] vagina via a live webcam feed during their . . . chat session").

In this case, based on the totality of the evidence presented, the court finds by a preponderance of the evidence that the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, namely repeated violations, or attempted violations, of § 2251(a). In particular, the Yahoo! chats demonstrate that the defendant was seeking to purchase live "shows" involving young girls that would be transmitted to him over the internet. For example, in a chat with a user named "Hot Bubbles," the defendant, who went by the user name "Grant Turnmire," asked "u do shows for $$$$." (Gov't Ex. 3 at 1.) After receiving an affirmative response, the defendant asked, "how old is girl," to which Hot Bubbles replied, "5 years old." (Id.)

After learning this information, the defendant did not balk or turn away, but rather proceeded with the negotiation, asking "how much do u want," before eventually agreeing on a $40 cost. (Id.). Although it appears that this initial transaction did not end satisfactorily, (see id. at 2 ("u already robbed me")), the defendant continued to negotiate with Hot Bubbles for a show, but he first demanded some assurances that the show he was purchasing would involve young girls before sending any more money, (see id. ("for how long of show and show me the girls so i know ur not liaing and i will send"). Hot Bubbles responded, in a series of messages, "ok . . . she is ready also . . . seeee she is ready . . . so email again? . . . love." (Id.) Whoever was shown to the defendant during this exchange must have been acceptable, as the defendant simply replied, "im already processing it." (Id.)

The rest of the Yahoo! chats in Government Exhibit 3 reveal similar negotiations for shows with young girls, including instances where the defendant rejected a particular show if the girl was too old for him. (See, e.g., id. at 4 ("Kyllie Sheen: im 17 years old; Grant Turnmire: NOT WORTH 50 ONLY LIKE YOUNG"); id. at 15 ("Sexy Shallanie: im 15; Grant Turnmire: not worth the money bye; Sexy Shallanie: so how old u like hon . . . have young friend here if u want; Grant Turnmire: any under 10; Sexy Shallanie: yess . . . have 6 years old . . . so u like? . . . 6 and 9?; Grant Turnmire: sure"). Moreover, the defendant's interest in young girls is further corroborated by (1) the fact that he possessed images of child pornography on his computer, including images of prepubescent females, as set forth in the PSR; and (2) the GigaTribe chats in Government Exhibit 2, in which the defendant asked numerous other users: "any one hav lil girls on webcam like under 13." (Gov't Ex. 2 at 6-7).

The court also finds that the defendant was soliciting shows involving sexually explicit conduct, even though none of the Yahoo! chats are explicitly sexual in nature. First, the fact that the chat participants used innocuous words such as "show" or "fun" does not change the fact that in reality the defendant was seeking a video feed of minors engaging in sexually explicit conduct. Moreover, there are some references of a sexual nature scattered throughout the Yahoo! chats.[1] For example, the defendant asked Kyllie Sheen "what will u do on cam," to which she replied, "i can do whatever u want." (Gov't Ex. 3 at 4.) Likewise, during the defendant's chat with Jellian Sassy, he asked her how she was doing, and she replied, "horny . . . wanna play now? . . . w/ young?" (Id.) The defendant later stated, "i don't have cam how long is show," to which Ms. Sassy replied, "ass long as u cum." (Id.)

The videos and images that were recovered from the defendant's computer, which he clearly obtained using a webcam that produced low-quality recordings,[2] further demonstrate the nature of

---

[1] There can be no dispute that the GigaTribe chats in Government Exhibit 2 are sexually explicit and involve discussions of sexual conduct with minors. Although the chats with "snbtime" and "jamessdeann" do not involve the solicitation of live webcam feeds, they do show the defendant's interest in sexually explicit conduct involving minors, and therefore, provide some corroboration for the government's contention that the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

[2] It is clear from the context of the video and image files on Government Exhibit 1 (i.e. the defendant's computer is often depicted along with the video or image he was trying to capture), the low quality of the recordings themselves, and the testimony of Agent McDaniel, that the defendant used a webcam to obtain these files. This indicates that the

3

the defendant's conduct. Although the video files on Government Exhibit 1 do not depict "sexually explicit conduct," as that term is defined in § 2256, these files do show the nature of the live video broadcasts that the defendant was seeking, as they show young girls in various states of undress, often sitting or lying on a bed in their underwear.[3] The image files, on the other hand, which the court finds to be still images that were taken from a live video feed on the defendant's computer, do contain sexually explicit conduct, especially the images numbered 247059, 247061, and 247062, which constitute a lascivious exhibition of the genitals of a prepubescent female child. As the government persuasively argues in its post-hearing memorandum, these images reflect what the defendant was interested in recording and accurately evidence his intent to obtain and view live depictions of sexually explicit conduct.

Based on the foregoing, the court has no trouble finding by a preponderance of the evidence that the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, and therefore, that a 5-level enhancement pursuant to § 2G2.2(b)(5) is warranted. This enhancement changes the defendant's total offense level to a level 39, which, along with his criminal history category of I, yields an advisory guidelines imprisonment range of 262-327 months.

In making this finding, the court has necessarily rejected the defendant's argument that the government's evidence only shows that he "viewed and copied by webcam that which is deemed child pornography," and that his conduct amounts to nothing more than trafficking in child pornography. While the government's objection could have been stronger if it had financial records establishing that the defendant actually made payments via Paypal in an attempt to obtain sexually explicit video feeds, the Yahoo! chat logs clearly show the defendant admitting to sending payment for the shows he was soliciting, and even if his efforts were unsuccessful, that evidence demonstrates an attempt to commit a violation of § 2251(a), which is sufficient for purposes of the enhancement in § 2B2.2(b)(5). Moreover, the court finds by a preponderance of the evidence that the defendant obtained at least one live video broadcast given the sexually explicit images files discussed above, which were clearly taken using a webcam in order to capture images from a live video feed that was being broadcast. Finally, the fact that the government did not tie the images in Exhibit 1 to any specific communications in Exhibits 2 and 3 is of no consequence. Indeed, the government's evidence was intended to show a pattern of activity, and therefore, the fact that the image files on Exhibit 1 and the chat logs in Exhibit 3 may reflect different occurrences actually supports the government's objection.

As a final matter, pursuant to Federal Rule of Criminal Procedure 32(h), the court hereby gives notice to the parties that it is considering whether the cross reference found in § 2G2.2(c)(1) is applicable in this case. Although not addressed by either party, that section provides that "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of

---

defendant was obtaining a live video feed rather than a pre-recorded video file which could have been directly saved or stored on the defendant's computer.

[3]The court finds it more likely than not that these video files were recorded from a live video stream that was shown to the defendant during the negotiation process, such as when he demanded to see the young girls in order to verify their age, which would explain why they do not contain sexually explicit conduct. The court can conclude that the defendant started recording these segments in anticipation of the "show" that he hoped would soon follow.

4

producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply § 2G2.1 . . . if the resulting offense level is greater than that determined above." As discussed above, the defendant's offense, including all relevant conduct, see U.S.S.G. § 1B1.1 cmt. n.1(H), included at least one instance in which the defendant successfully obtained a video feed of sexually explicit conduct as demonstrated by images 247059, 247061, and 247062. Moreover, the court's preliminary calculations under § 2G2.1, before consideration of any potential reduction for acceptance of responsibility, yield a total offense level of 44, which is greater than the total offense level of 42 determined under § 2G2.2.[4] However, before applying the cross reference, the court will first give the parties an opportunity to respond and address this issue.

This case is set for status on Friday, April 11, 2014 at 9:00 a.m. in order to set a briefing schedule on the issues raised by the court's Rule 32(h) notice; to set a briefing schedule for the defendant to file a motion for a downward variance, as requested in his post-hearing brief; and to set a date for the continued sentencing hearing in this matter.

Date: 4/9/2014

ENTER:

_____

FREDERICK J. KAPALA

District Judge

---

[4] In particular, the court preliminarily calculates a base offense level of 32, pursuant to § 2G2.1(a); a 4-level enhancement, pursuant to § 2G2.1(b)(1)(A), because the offense involved a minor who had not attained the age of twelve years; a 2-level enhancement, pursuant to § 2G2.1(b)(3), because the offense involved distribution; a 4-level enhancement, pursuant to § 2G2.1(b)(4), because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence; and a 2-level enhancement, pursuant to § 2G2.1(b)(6), because the offense involved the use of a computer to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct. These calculations result in an offense level of 44, which could be reduced by 3 levels if the defendant continues to demonstrate an acceptance of responsibility.

5